UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| G31000 NORTH AMERICA, INC., ALLEN GLUCK, and ALEXIS DALI,<br><br>                              Plaintiffs,<br><br>-against-<br><br><br>CHRISTOPHER PARIS AND OXEBRIDGE QUALITY RESOURCES INTERNATIONAL, LLC.<br><br>                              Defendants. | Civil Action No.: 1:14-cv-03885-VEC<br><br><br>**DECLARATION OF ALLEN GLUCK IN SUPPORT OF TEMPORARY RESTRAINTS AND PRELIMINARY INJUNCTION** |

**PURSUANT TO 28 U.S.C. §1746, I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT:**

ALLEN GLUCK, being duly sworn deposes and says::

1. I am the Director of Plaintiff G31000 North America, Inc., ("G31000"). I submit this declaration pursuant to Fed. R. Civ. P. 65 and Local Rule 6.1 in support of Plaintiffs' application for a temporary restraining order and preliminary injunction enjoining Defendants Christopher Paris ("Paris") and Oxebridge Quality Resources International, LLC. ("Oxebridge") from *inter*

1

*alia,* publishing defamatory and libelous statements and/or tortiously interfering with Plaintiff's business as described below and in the accompanying Complaint, Memorandum of Law and other papers.

2. On May 30, 2014, G31000, filed this action along with Alexis Dali and myself (together "Plaintiffs"), seeking damages, declaratory, and injunctive relief, based on Paris' campaign to defame G31000 and tortiously interfere with its business contracts.

3. Paris embarked upon his campaign on or about February 13, 2014 and has persisted unabated despite requests by Plaintiffs that Paris cease spreading calumnies.

4. Therefore, Plaintiffs were compelled to bring the instant action and for the reasons explained below, similarly have no recourse but to request this temporary restraining order and preliminary injunction to preserve the status quo and prevent further damage to Plaintiffs as a result of Paris' continued actions. A copy of the complaint dated May 30, 2014 (the "Complaint") is attached as Exhibit A.

5. As detailed in the Complaint, Plaintiffs have already been irreparably damaged in their business because of the defamation and tortious interference by Paris, particularly with regard to their ability to organize business conferences and present distinguished speakers which is vital to attracting participants to G31000's business.

6. Since the filing of the Complaint, Paris has caused at least one contractually bound speaker to withdraw from the upcoming conference through his continued Cyber Bullying - specifically, his threats to derail the speaker's career.

**Background**

7. I and Alexis Dali have been involved in the standards setting industry for over 20 years, regularly contribute to industry publications and speak internationally at conferences and educational programs.

8. Plaintiffs are engaged in the risk management industry with a specific concentration in the ISO 31000 method, an international standard for risk management adopted as national risk management standard in the USA, as ANSI/ASSE/ISO 31000.

9. Defendants Paris, and I believe Oxebridge, provide consultation services primarily in ISO 9001 standard, an international management system standard for quality management.

10. G31000 provides educational courses, testing, and certification. Because of the developing nature of this specialty, G31000's business model relies upon public consensus built through conferences where ideas and best practices are shared through candid conversation.

11. The ISO 9001 standard will require the addition of a risk management component by 2015. Paris has been an outspoken critic of risk management in general and of ISO 31000 in particular.

12. Paris and Oxebridge operate in an overlapping industry to Plaintiffs, and is seeking to drum up popularity for himself and his business at the expense of G31000. Indeed, Paris states in a LinkedIn post that he makes money through LinkedIn. (Attached hereto as Ex. B).

13. G31000 maintains a LinkedIn group with forums for discussion. The group is a key component of the G31000 business model, as it provides a key platform for interchange of idea, marketing and promotion, sales of G31000 services and a medium for an authoritative voice in the industry.

14. As part of his campaign against ISO 31000, Paris began writing inaccurate statements on the G31000 LinkedIn group and continued to do so even after warnings to cease from the forum moderator.

15. Paris threatened to harm Plaintiffs -both financially and professionally- when the G31000 LinkedIn group moderator subjected Paris' comments to review before public dissemination.

16. As set forth in the documents submitted herewith, Paris has successfully cost Plaintiffs untold reputational and economic harm through threatening speakers of G31000 conferences, defaming G31000 and individuals and businesses publically associated with G31000.

17. Upon information and belief, Paris has no assets to satisfy a judgment against him and now lives in South America, from where he publishes his attacks on Plaintiffs using the Oxebridge website.

PARIS THREATENS TO HARM PLAINTIFF AND SUBSEQUENTLY ATTACKS

18. On February 26, 2014 Paris wrote an email to Plaintiff Dali stating in reference to a posting on the G31000 LinkedIn group "Your comments to me were very expensive. You are just not bright enough to realize it". (Attached hereto as Ex. C)

19. In a subsequent email, on February 26, 2014 Paris brazenly wrote "I intend on making sure this costs you money." (Attached hereto as Ex. D)

20. Paris followed up later with another email on February 26, 2014 stating "I have advised my aerospace client to seek Risk Management training from another provider. That just cost you, by my estimate, $67,500 in in-house training." (Attached hereto as Ex. E)

21. As a first move in his malicious drive to harm Plaintiffs, Paris sought to shut down G31000's LinkedIn account, including the associated forum with over 30,000 subscribers, by presenting a false complaint to LinkedIn. LinkedIn subsequently restored the group after 5 days and after members of the group expressed concern to Plaintiffs that G31000 was no longer in business.

22. When LinkedIn temporarily shut down the G31000 group based on false information, Paris sought to send members to a competing group while

5

celebrating the shuttering of G31000's group with defamatory postings, which remain visible on LinkedIn today.

23. Paris' posts on www.oxebridge.com remain visible today and rank highly on Google search results, confirming Paris' pursuit of a course of conduct to harm Plaintiffs.

24. Not content with vilification of Plaintiffs online, Paris wrote defamatory letters to my employer, Manhattanville College, with the specific aim of having me fired from my position teaching risk management.

25. When I was not fired immediately, Paris stoked the fire that he had placed under Manhattanville by publishing accusations against the college and its dean on Oxebridge.com.

26. As a consequence, I was not re-hired to teach the next semester despite receiving consistently stellar reviews for my course.

27. The college has also withdrawn its sponsorship from the upcoming G31000 conference and candidly admitted that Paris' actions caused damage to its relationship with G31000, myself, and Dali - leading also to this loss of my livelihood

28. As a key part of his campaign, Paris directly and indirectly contacted Plaintiff's customers, sponsors, affiliates, employees, potential customers, potential sponsors, potential affiliates, and potential employees to spread false and defamatory information about Plaintiffs.

29. In fact, the libel, defamation, and tortious interference has caused Plaintiffs' many program presenters to refuse to present, and attendees to reconsider attending, for fear of harassment from Paris.

30. Many conference attendees are public and government officials that are justifiably cautious to the potential for reputational harm that can be caused by Defendants simply for attending a conference presented by G31000. Plaintiffs have thus lost hundreds of thousands of dollars from a drop in conference attendance and sponsorship.

31. On March 15, 2014 Dali received an email from an acquaintance that explained "I have been copied into a number of emails would seem to be pronouncing the death of G31000 and showing an almost indecent haste to step into the breach."

32. Paris is seeking to attack G31000 and everyone associated with it in order to increase his profile, fashion himself as some form of crusader but ultimately to market his own business.

33. Paris's malicious and defamatory posts variously refer to G31000 as "fear mongering", "drunk drivers", "sketchy", "a fraud", "operated by a charlatan", "a scandal", "unaccredited", "shut down by LinkedIn", "dedicated to cashing in", "unaccredited certification", "a one man pipe dream proposed up by exaggerated credentials", "contains so much false information", "violation of FTC rules", "harvesting content", "multiple violation of linked in policies", "unethical", and "rife with conflicts of interest and potentially illegal."

34. Paris' calumnies variously describe Alex Dali myself as associated with the following terms "Misleading or false credentials", "serial plagiarism", "heavy handed censorship", "never been published", "untrue", "penchant for spam", and "charlatans Alex Dali and Allen Gluck".

35. Had Paris even attempted to carefully read the publically available information as opposed to surmising and creating untruths, he would have known there are no bases for the allegations.

36. When Paris was informed that he had posted false information, he simply responded "Please be aware that we cannot know everything about everything before posting. So mistakes will slip through." (Attached hereto as Ex. F)

37. Despite notification and many opportunities to rectify errors, Defendants have not published a retraction or correction.

38. Defendant's website and LinkedIn posts remain online and his publications remain available to this date.

39. In addition to the publishing on Defendant's website, the vitriol has spread to other websites as well by virtue of either organic reposting or placement.

**Paris Continues to Attack after Being Served**

40. Paris was served with the summons and complaint in this action on June 19, 2014 and has not yet answered.

41. While Paris subsequently appeared to tailor his language to avoid obvious defamation, it was soon apparent that he has every intention of continuing his tortious interference and defamation by seeking to intimidate supporters or proponents of G31000.

42. On June 29, 2014 Paris embarked upon a vicious online attack of the recently announced keynote speaker to the conference, Dr. Karen Hardy, a published authority on Enterprise Risk Management.

43. Dr. Hardy currently holds the position of Deputy Director for Risk Management at the Office of Performance, Evaluation, and Risk Management which is part of the Office of the Chief Financial Officer and Assistant Secretary for Administration of the US Department of Commerce.

44. Aware that Dr. Hardy is an advisor to the office of the President, Paris threatened her career because of her affiliation with G31000 should she speak at the G31000 conference.

45. In a post on June 29, 2014 Paris stated "When the story of her unaccredited credential hits – *and it will* – she is likely to be fired for having embarrassed the White House, and right wing talk radio is going to use this as one more thing to humiliate the President with." (Attached hereto as Ex. G)

46. This is a nasty personal attack on a respected individual and is designed solely to cause Dr. Hardy to disassociate herself from G31000 or as Paris would have it "an unaccredited French dude."

47. Rightfully concerned that Paris will seek to destroy her career based on spreading misinformation, Dr. Hardy withdrew from the conference specifically because of the post. (Attached hereto as Ex. H)

48. However, interfering with G31000 was not enough for Paris, who posted again on Oxebridge, in a manner which is properly described as 'stalking', a follow up post, with side-by-side screenshots of Dr. Hardy's LinkedIn profile contrasting how she previously described her affiliation with G31000. (Attached hereto as Ex. I)

49. Paris has sought to continuously harm Plaintiffs' by reaching out to and indirectly contacting Plaintiffs' customers, sponsors, and speakers to spread false and defamatory information about Plaintiffs.

50. In threatening to derail political and risk management careers, Paris tortiously interferes with Plaintiffs' contractual relationships.

51. G31000 is being irreparably harmed by Paris' malicious campaign. G31000 faces the immediate destruction of its business if Paris' unlawful commercially driven speech and interference is permitted to continue.

52. The essence of G31000's business model is its ability to foster consensus amongst the risk management industry experts. Paris' efforts are focused on creating discord through defamatory statements and tortious interference, and which directly and negatively impacts G31000's business.

53. Paris' actions are impacting G31000 which is hindered in attracting new business because experts, such as the speaker, are part of the draw to the conference.

54. If the court allows Paris to continue his defamatory and tortious campaign, G31000 could be put out of business as potential clients will stop - and have already refrained from attending conferences and registering for the educational training

55. The value of G31000's reputation, and therefore G31000's business, is irreparably damaged if those in the industry view it as subject to constant attack by Paris.

56. If Paris is enjoined from targeting Plaintiffs with defamatory, tortious, and harmful statements, the parties will simply be restored to the same relationship they were in before February 26, 2014 the date of Paris campaign where he stated "I intend on making sure this costs you money".

57. Paris will experience no burden by refraining from attacking G31000.

Spring Valley, NewYork

Executed on July 10, 2014

Signed: *[signature]*

Name: Allen Gluck