**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**G31000 NORTH AMERICA INC., ALLEN**
**GLUCK, and ALEXIS DALI,**

       **Plaintiffs,**

-against-

**CHRISTOPHER M. PARIS, and OXEBRIDGE**
**QUALITY RESOURCES' INTERNATIONAL, LLC.,**

    **Defendants.**

| |
|---|
| **14-cv-3885**<br>**Declaration of Chris Paris In**<br>**Opposition of Temporary**<br>**Restraints and Preliminary**<br>**Injunction** |

PURSUANT TO 28 U.S.C. §1746, I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT:

CHRISTOPHER M. PARIS, hereby declares under penalty of perjury that:

1. I make this Declaration in Opposition of Plaintiffs' Motion for Temporary Restraints and Preliminary Injunction.

2. I am represented in the above-styled lawsuit by William R. Wohlsifer, Esquire, as my Attorney of Record. I can be contacted through my attorney (850) 219-8888.

3. I am the president of Oxebridge Quality Resources International LLC ("Oxebridge").

4. I am domiciled in Polk County and a resident of the State of Florida.

5. I operate a blog on the website for Oxebridge Quality Resources International, LLC, http://www.oxebridge.com/emma/blog-posts/.

6. I contribute to online groups on the professional social networking website, LinkedIn, relevant to the ISO industry.

7. The purpose of my blog and my postings in general is to investigate and disseminate information primarily focused on the ISO 9001 industry as well as to comment on that information.

Exhibit "B"

8.  All information I post not marked as opinion or self evident to be opinion has been factually accurate

9.  I made numerous attempts to contact Plaintiffs' and ask for clarifications without any response by plaintiffs, before running stories relating to the plaintiffs.

10. On or about March 6, 2014, Allen Gluck sent me an email informing me they will not respond to my communications.

11. In rare incidents where a post was believed to be accurate at the time of posting but after investigation or time required editing, it has always been my regular procedure to post retractions or corrections, thereof. Further, plaintiff's Exhibit "F" is an example of my willingness to make corrections when evidence to the contrary has been found.

12. I have not perused to prevent any of the speakers from attending the business conferences organized by G31000 directly. More specifically, plaintiffs' Exhibit "H" states that Dr. Karen Hardy, one of the two speakers that dropped out of plaintiffs' conference, only did so after Alex Dali brought my blog to her attention not that I contacted her.

13. I did not threaten or intimidate any speaker for G31000.

14. I professionally contracted three speakers as a courtesy to alert them to my findings on G31000.

15. I have only professionally contacted three speakers to alert them to my findings on G31000.

16. Dr. Karen Hardy (not a member of this suit) does hold a risk management certification from G31000, but G31000 has no accreditation or authority to issue such certification and therefore all statements I made about Dr. Hardy are factually accurate.



17. I am unaware of any G31000 clients, as such plaintiffs' assertion that I contacted their clients is false.

18. I do not believe G31000 has any employees, as such plaintiffs' assertion that I contacted their employees is false.

19. I did contact G31000's "sponsors" to confirm their relationship with G31000. Of the companies I contacted that responded they all indicated they never agreed to be listed as a sponsor of G31000.

20. I offer no service whatsoever related to anything G31000 offers.

21. I am in involved in ISO 9001 (quality management) and plaintiffs are involved in ISO 31000 (risk management).

22. Plaintiffs are falsely maintaining that ISO 9001 "requires risk management", thus implying that users of ISO 9001 therefore need their ISO 31000 services.

23. Plaintiffs are overlapping the industries as a marketing approach, but it is entirely false and misleading to do so. ISO 9001 specifically states that risk management is not required.

24. Plaintiffs have continually misrepresented my statements by taking them out of context.

25. I informed plaintiffs that the loss of my recommendation and support would cost them; specifically I revoked my recommendation of G31000's services to my aerospace clients as I had previously intended to do,  and did not promote them in my presentations. Further, as Plaintiffs' Exhibit "E" points out I chose to do so after discovering their incompetence not in retaliation for being harassed on LinkedIn.

26. Any business I may generate related to LinkedIn has been taken out of context by the plaintiff and is immaterial to plaintiffs' allegations.



27. My advocacy work on LinkedIn has an ancillary effect of getting me work from people who like what I do, but it is not why I do it. Doing so also costs me money and alienates some people. But that was the context of my statement. I do not make any money competing with G31000, since I offer no service any way related to theirs.

28. I make these posts as a "watchdog" attempting to preserve the integrity of the ISO certification industry.

29. I never posted any inaccurate information on Linkedin.

30. I was never warned by a G31000 moderator for posting inaccurate statements.

31. I submitted a complaint to LinkedIn about violations of the LinkedIn User Agreement by G31000 after discovering that they had created a fictitious profile in order to induce new business. LinkedIn choose to suspend their accounts after reviewing my information as I do not have the ability to do so.

32. At no point did I request Manhattanville College fire Allen Gluck.

33. My correspondence with the college was to confirm his status as a professor and inform the college of the findings of my investigation.

I declare all of the aforementioned statements to be true under penalty of perjury.

Executed on July 29, 2014.

Signed:

Name: Christopher Paris