UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| G31000 NORTH AMERICA, INC., ALLEN GLUCK, and ALEXIS DALI,<br><br>　　　　　　　　　　Plaintiffs,<br><br>-against-<br><br><br>CHRISTOPHER PARIS AND OXEBRIDGE QUALITY RESOURCES INTERNATIONAL, LLC.<br><br>　　　　　　　　　　Defendants. | Civil Action No.: 1:14-cv-03885-VEC |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Garson, Ségal, Steinmetz, Fladgate LLP
164 West 25th Street, 11R
New York, NY 10001
Tel: (212) 380-3623

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................2

THE FACTS ....................................................................................................................................5

ARGUMENT ...................................................................................................................................5

I.  THE COURT SHOULD GRANT THE PRELIMINARY INJUNCTION ...............................5

    A.  It Is Highly Probable That Plaintiffs Will Succeed on the Merits of Their Claim ........6

        1.  The Continuing Course of Unprotected Defamatory Conduct ..........................6

        2.  Defendant's Speech Is Not Protected by the First Amendment ........................7

        3.  The Combination of Defamatory Speech in the Context and Other Torts ........7

    B.  Irreparable Injury ...........................................................................................................9

    C.  Monetary Damages Are Insufficient ............................................................................10

    D.  Balance of Equities ......................................................................................................11

    E.  The Public Interest .......................................................................................................12

CONCLUSION ..............................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                                                                   **PAGE(S)**

*AP Management Corp. v. Young & Rubicam, Inc. et al*
   62 Civ. 264, 1962 U.S. Dist. Lexis 4738 (S.D.N.Y. 1962)..................................................11

*Bihari and Bihari Interiors Inc. v. Gross et ano.*
   119 F. Supp. 2d 309 (S.D.N.Y. 2000)..........................................................................8

*Chambers v. Scutieri*
   No. A-4831-10T1, 2013 N.J. Super. Unpub. 760 (App. Div. Apr. 4, 2013).......................10

*eBay Inc. v. MercExchange, L.L.C.*
   547 U.S. 388 (U.S. 2006)...........................................................................................5

*Eppley v. Iacovelli*
   2009 U.S. Dist. LEXIS 33473 (S.D. Ind. Apr. 17, 2009)..............................................7, 12

*Gertz v. Robert Welch, Inc.*
   418 U.S. 323 (1974)..................................................................................................7

*Kirch v. Liberty Media Corp.*
   499 F.3d 388, 400 (2d Cir. 2006).................................................................................8

*Murtagh v. Hurley*
   50 So. 3d 62 (Fla. 2d DCA 2010)................................................................................8

*Rombom v. Weberman*
   No. 1378100, 2002 WL 1461890 (N.Y. Sup. Ct. June 13, 2002)......................................6

*ThermoLife Intern v. Connors*
   2014 WL 1050789....................................................................................................10

*Town and Country House and Home Service v. Newberry*
   3 N.Y. 2d 544, N.Y.S. 2d 328 (1958)..........................................................................9

*Winter v. NRDC, Inc.*
   555 U.S. 7 (U.S. 2008).............................................................................................5

**SECONDARY SOURCES**

   1 Robert D. Sack, Sack on Defamation, § 10.6.1 (3d ed. 1999)......................................8
   7A Weinstein, Korn & Miller, New York Civil Practice §6301.15 at 63-42 (1984)............9
   55 William & Mary Law Review 1, 33 (2013)..............................................................6

Plaintiffs G31000 North America, Inc. ("G31000"), Allen Gluck ("Gluck") and Alexis Dali ("Dali") (collectively "Plaintiffs"), by their attorneys, Garson, Ségal, Steinmetz, Fladgate LLP, respectfully submit this memorandum of law in support of their motion for a temporary restraining order and preliminary injunction.

## Preliminary Statement

Plaintiffs commenced this action in order to recover damages and obtain equitable relief from defendants Christopher Paris ("Paris") and his company Oxebridge Quality Resources International LLC ("Oxebridge") (collectively "Defendants"). Over the last number of months Paris has embarked upon an online crusade specifically to harm the business of the Plaintiffs. Paris, seemingly, has appointed himself to be an arbiter of international standards when it comes to the professional world of risk management or ISO 31000.

Paris, posting online through his own LinkedIn account and on the website of Oxebridge, has disseminated incorrect rumors, unfounded allegations and calumnies about the Plaintiffs. While purporting to be a concerned outsider, the actuality is much more sinister. Paris both individually and through Oxebridge consults on Quality Management Systems or ISO 9001. According to the International Standards Organization, in 2015 Paris' discipline will have to integrate and include risk management or ISO 31000. Therefore, where beforehand Paris may have had expertise in one area of his chosen field, he shall be completely

2

lacking in the other. Therefore, it is in his interests and those of Oxebridge to clear the path for competitors in the field.

Paris' chosen medium, on the whole, is the internet and its associated social media outlets and his campaign has been one of cyber bullying namely, threats, intimidation, scurrilous allegations and absurd comparisons in his *ad hominem* attacks.

As identified in the complaint filed on May 30, 2014 ("Complaint") ¶¶46 – 51, Paris took the matters a step further by pressuring Manhattanville College to fire Gluck - its adjunct professor on risk management.  This gave rise to Counts IV and V ¶¶123-135.

The fears clearly expressed in the Complaint ¶55 – 61 are that Paris will continue to target those who affiliate with the Plaintiffs and speak at their conferences, which are a large source of revenue and are invaluable from a marketing perspective in terms of advertising G31000's training program.

At the heart of Paris' misplaced self-righteousness is that G31000 issues certifications to those who complete the G31000 training program and pass the exam. Paris takes offence that G31000 issues certificates, calling it a "certificate

3

mill," despite there being no other centralized body that grants qualifications in the area of Risk Management.

Over the last two weeks Paris -through Oxebridge- launched a vitriolic attack on G31000 and one of the advertised keynote speakers at the July 2014 conference. In the online publication Paris sought to equate Dr. Harding, who holds a respected position in the US Department of Commerce, with unqualified charlatans who have caused death to their unsuspecting patients. Dr. Harding was due to speak at the July 2014 conference in New York but Paris openly threatened that if she did, she would lose her job and cause embarrassment to the President due to the adverse press attention.

Dr. Harding, when notified of the adverse attention, in a similar vein to prior speakers (Complaint ¶58) informed Mr. Dali that she could no longer present at the annual conference. When Dr. Harding became aware of the adverse attention she informed Mr. Dali that she was withdrawing as a conference speaker. The loss of such a high profile speaker from the conference has caused irreparable harm.

Plaintiffs are entitled to protection so that they can continue their business, remedy the harm already inflicted by Paris, and bring in other speakers to the G31000 conference who can be assured that they will not be subjected to personal or professional attacks by Defendants.

4

## THE FACTS

The facts are set forth in detail in the Declaration of Allen Gluck ("Gluck Decl."), dated July 10, 2014, and the Complaint (Gluck Decl. Ex. A) both of which are incorporated herein.

## ARGUMENT

### I – THE COURT SHOULD GRANT THE PRELIMINARY INJUNCTION

"The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success". *Winter v. NRDC, Inc.*, 555 U.S. 7, 32 (U.S. 2008).

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (U.S. 2006).

## A. Plaintiffs Will Likely Succeed on the Merits of Their Claims

The well-settled law of defamation, unfair competition and interference with business relations leaves little doubt that Plaintiffs will prevail on the merits. Paris and Oxebridge are unable to disclaim the fact that the statements were made by Paris, as the Internet is relatively indelible and he has championed the effects of his actions. Instead, it is anticipated that the focus of this case will be as to whether the speech is defamatory and the conduct tortious and will largely turn on matters of law.

### 1. The Continuing Course of Unprotected Defamatory Conduct

The documented vicious attacks on Plaintiffs gives rise to a likelihood of success on the merits. As both the Complaint and the Gluck Declaration demonstrate, the publications are components of a systemic effort to harm the Plaintiffs. "[C]ourts have also found it relevant that the speech at issue was part of a continuing course of tortious conduct or that the defendant has given clear indications that he would continue to defame or harass the plaintiff." David S. Ardia, Freedom of Speech, Defamation and Injunctions *55 William & Mary Law Review 1 (2013)* p.33 (citing e.g. *Bingham v. Struve*, 591 N.Y.S.2d 156, 158 (App. Div. 1992); *Rombom v. Weberman*, No. 1378100, 2002 WL 1461890, at *13 (N.Y. Sup. Ct. June 13 2002), aff'd 766 N.Y.S.2d 88 (App. Div. 2003)).

6

### 2. Defendant's Speech is Not Protected by the First Amendment

Any concern that Defendants' speech is protected, is easily allayed. "Not all speech is afforded the same protection under the First Amendment. Specifically, there is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 338 (1974). Further Paris' speech is of low constitutional value not only because it is tainted by falsehood but also because it is commercial in character. See *Eppley v. Iacovelli,* 2009 U.S. Dist. LEXIS 33473 (S.D. Ind. Apr. 17, 2009).

Paris' platform is a commercial one; the majority of his posts are on a business-to-business social network within groups dedicated to risk analysis in the commercial world. Paris, through Oxebridge, sells services and promotes himself. "Therefore, it is afforded minimal First Amendment protection...." *Id.* at *2. And "[w]hen a defendant has engaged in an intentional 'smear campaign' through defamatory publications, injunctive relief is proper". *Id.* at *4. Both temporary and permanent injunctive relief is necessary and appropriate here.

### 3. The Combination of Defamatory Speech and Other Torts

The evidence clearly shows that Paris is hell bent of causing financial harm to Plaintiffs (see Complaint ¶¶33-37 where Paris admits that his actions have caused financial harm to Plaintiffs). This demonstrates the symbiosis between Defendants' defamatory statements and Plaintiffs' tortious interference claims. See *Bihari and Bihari Interiors Inc. v. Gross et ano.* 119 F. Supp. 2d 309 (S.D.N.Y. 2000) (citing *Troj*

7

*an Elec. & Mach. Co. v. Heusinger*, 162 A.D.2d 859 (3d Dep't 1990) ("[A]n injunction will lie to restrain libel when the publication is made as part and parcel of a course of conduct deliberately carried on to further a fraudulent or unlawful purpose."); 1 Robert D. Sack, Sack on Defamation, § 10.6.1 (3d ed. 1999) ("In unusual situations where, for example, defamatory words are in aid of another tort such as fraud, injunction may issue.") See also e.g. *Murtagh v. Hurley*, 50 So. 3d 62 (Fla. 2d DCA 2010) (injunctive relief available when defamatory statements allegedly caused current medical patients to terminate their relationships with plaintiff — had Plaintiff provided "proof to a reasonable certainty" they would have established a right to injunctive relief).

"To state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used, dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp.*, 499 F.3d 388, 400 (2d Cir. 2006).

The Plaintiffs contend that there is a strong likelihood that the Court will find that the Defendants defamatory campaign is designed to tortiously interfere with G31000's, clients, speakers, conference attendees and general business contracts.

8

B. Irreparable Injury

Irreparable injury has been defined as "that which cannot be repaired, restored or adequately compensated in money or where the compensation cannot be measured. 7A Weinstein Korn & Miller, New York Civil Practice § 6301.15 at 63-42 (1984). It is well settled that irreparable injury occurs where, as here, the goodwill of a business is jeopardized becuase; "Customers whose trade and patronage have been secured by years of business effort and advertising, and the expenditure or time and money, constitut[e] a part of the goodwill of a business which enterprise foresight have built up." *Town and Country House and Home Service v. Newberry*, 170 N.Y.S.2d 328, 331 (1958) (citations omitted).

Under applicable law, there is no need to wait for defendants to do harm before the injury qualifies as irreparable. Actual harm need not be demonstrated before an applicant for injunctive relief can show irreparable harm. It suffices if the harm is merely incipient or threatened. Nonetheless, here the harm is real and actual.

Not only has Gluck lost his position at Manhattanville College as a result of Paris' campaign but Paris' most recent publications against Dr. Karen Harding were clearly designed to intimidate, cause harassment and distress to the speaker. Dr. Harding's email is clear on the cause of her withdrawal from the conference.

9

### C. Monetary Damages Are Insufficient

Even if Paris or Oxebridge has the capability to pay damages, G31000's business model focuses on its conference. Cancellation or even diminished attendance at one conference can have devastating effects on Plaintiff's business for the foreseeable future.

"Compensatory damages may provide relief, but will not relieve Plaintiffs from the potential for future harm. Injunctive relief is particularly appropriate where the defendant has shown no inclination to discontinue an ongoing course of tortious activity (and may be judgment proof to boot). A plaintiff subject to continual defamation or tortious interference with his business is not necessarily required to endure it and continually supplement his claims for damages; he is entitled to have the activity stopped." *ThermoLife Intern v. Connors* at 2014 WL 1050789 at *5 (internal citations and notations omitted).

An injunction is appropriate to prevent Defendant from continuing to defame Plaintiffs on the Internet. See *Chambers v. Scutieri*, No. A-4831-10T1, 2013 N.J. Super. Unpub. 760 (App. Div. Apr. 4, 2013) ("We reject defendant's contention that equity cannot enjoin defamation." *Id.* at *37. "Plainly, a party who is the victim of defamation is entitled to an effective remedy. To ensure this occurs, we conclude that a trial court must have the ability to issue a permanent injunction to protect the individual's good name and dignity …." *Id.* (internal quotation marks omitted)).

10

Furthermore, it has long been held that a court may issue an injunction to protect the plaintiff's business or other property interests. "Where the words are calculated to frighten, intimidate or coerce the customers or clients of the complainant into discontinuing business relations, equity may interfere by injunction." *AP Management Corp. v. Young & Rubicam, Inc. et al*, 62 Civ. 264, 1962 U.S. Dist. Lexis 4738 at *48-9 (U.S.D.C. S.D.N.Y. 1962)

Defendants are causing immediate harm, not just to Plaintiffs' reputations but also to G31000's business interests. The protections of the Court are thus necessary and appropriate.

### D. Balance of Equities

The equities in the instant application tip decisively in Plaintiffs' favor, thus fulfilling the penultimate prerequisite for a preliminary injunction. The Defendants have wreaked sufficient havoc on the business of the Plaintiffs and those associated with Plaintiffs, and arguendo have had their say. Given that it is Paris' explicitly stated mission to damage Plaintiffs, G31000 must be permitted to continue running its business without interference from Defendants. Neither Paris nor Oxebridge need to vilify Plaintiffs in order to legally conduct their own business.

### E. The Public Interest

The adult form of cyber-bullying does very little to advance the cause of business, advance the debate on risk management or the establishment of standards for the industry. "Intentional lies do not materially advance society's interest in uninhibited, robust, and wide-open debate on public issues." *Eppley v. Iacovelli,* 2009 U.S. Dist. LEXIS 33473 at *4 (S.D. Ind. Apr. 17, 2009) (citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 265 (1964)). Society's interest is not furthered when Defendants threaten those who wish to engage in candid professional dialogue with ridicule, hatred, or disrepute. This is especially true when Defendants' ulterior motive is to advance their own careers at Plaintiffs' expense.

## CONCLUSION

Based on the foregoing, it is respectfully requested that Plaintiffs' motion for a temporary restraining order and preliminary injunction be granted in its entirety, and that Plaintiffs have such other, further and different relief as this Court may deem just and proper.

Dated: New York, NY
July 10, 2014

                                                      Respectfully submitted,

                                                  By:     /s/
                                              Robert Garson (RG1521)
                                  Garson, Ségal, Steinmetz & Fladgate
                                     164 West 25th Street, Suite 11R
                                               New York, NY 10001
                                                    212-380-3623
                                                   RG@GS2Law.com