UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| G31000 NORTH AMERICA, INC., ALLEN GLUCK, and ALEXIS DALI,<br><br>                              Plaintiffs,<br><br>-against-<br><br><br>CHRISTOPHER PARIS AND OXEBRIDGE QUALITY RESOURCES INTERNATIONAL, LLC.<br><br>                              Defendants. | Civil Action No.: 1:14-cv-03885-VEC |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Garson, Ségal, Steinmetz, Fladgate LLP
164 West 25th Street, 11R
New York, NY 10001
Tel: (212) 380-3623

*Attorneys for Plaintiffs*

1. Plaintiffs G31000 North America, Inc. ("G31000"), Allen Gluck ("Gluck") and Alexis Dali ("Dali") (collectively "Plaintiffs"), by their attorneys, Garson, Ségal, Steinmetz, Fladgate LLP, respectfully submit this memorandum of law in reply to Defendant's (sic) Response in Opposition to Plaintiff's (sic) Motion for Preliminary Injunction and Temporary Restraints undated but filed on July 30, 2014 ("Defendants' Memorandum" or "Def. Memo.")  on behalf of Christopher Paris ("Paris") and Oxebridge Quality Resources International LLC ("Oxebridge") (collectively "Defendants").

**Preliminary Statement**

2. It is neither the intention of the Plaintiffs to over paper the Court and repeat all of the pleadings contained in the initial memorandum of law dated, July 10, 2014, nor duplicate the allegations specified and appended to the Amended Complaint filed on August 6, 2014 ("Amended Complaint" or "Amend Compl.").

3. Both Defendants' Memorandum and the Declaration of Chris Paris In Opposition of Temporary restraints and Preliminary Injunction, dated July 29, 2014 ("Paris Decl.") are replete with incongruity, unsubstantiated allegations, vagary and self-serving statements. Hence, the complete lack of any exhibit to support the contentions made by the Defendants.

4. The Defendants initially[1] rely upon issues of personal and subject matter jurisdiction, which are dealt with in the Amended Complaint ¶¶17-24, however,

---

[1] Defendants also have raised ECF filing glitches as procedural deficiencies. Such a contention is without merit or the support of authority. Similarly, Defendants erroneously allege that Plaintiffs ' initial memorandum of law exceeds 25 pages which it does not, it sits at 15, including frontsheet and table of contents, table of authorities. (Def. Memo. ¶ 5).

such arguments will be briefly dealt with in the body of this memorandum. In short, it is Plaintiffs' position that there are no jurisdictional bars that would preclude the Court dealing with the instant matter.

5. Parsing the Paris Declaration apart it is clear that Defendants admit to:

   i)   Contacting speakers scheduled to appear at the Conference;

   ii)  Contacting sponsors of the Conference;

   iii) Contacting Gluck's employer and the college with which Plaintiffs had a relationship;

   iv)  Conducting "investigations;" and

   v)   Presenting unnamed people with his "findings."

6. It is clear from his declaration that Paris is not an accredited investigator, a licensed detective, an authorized regulator, recognized to be able to give accreditation, nor a member of the press. It seems that Paris operated under the guise of a self anointed "watchdog" (Paris Decl. ¶28) of an industry while also admitting that he derives business profile and clients and income arising out of his "advocacy work on LinkedIn." (Paris Decl. ¶20) Defendants thus seek to raise their own profile through tortuous interference, defamation, unfair competition, and subsequent "reporting" as if all the "investigation", (i.e. instigation) was undertaken by an uninterested third party.

7. It is unknown whether Defendants' employ any form of acceptable method in pursuing their "investigations" prior to presenting their "findings" to people with whom Defendants conduct business and their motivation in doing so. It is at the

core of Plaintiffs' case that Paris has done so, in order to interfere with Plaintiffs business.

8. We submit that expedited discovery or examination at a hearing is necessary, especially in light of Defendants blatantly false plagiarism allegations, in order for the Court to evaluate whether the unknown "findings" communicated to unspecified G31000 speakers and others are properly formulated, and to stop Defendants from any continued interfering with Plaintiffs' business through the course of this suit.

**A. Jurisdiction**

9. Plaintiffs submit that the Amended Complaint clearly establishes that both Defendants are subject to the personal jurisdiction of this Court.
10. On his own admission, Paris contacted speakers, sponsors and Manhattanville College, a New York entity and Gluck's former employer.  Further, Defendants have targeted a New York company, regarding a conference that was held in New York, filed a complaint with the Attorney General of New York, made multiple attempts to have a New York College "reconsider its relationship with Plaintiffs", causing harm in New York. If that were not sufficient, Defendants have conducted significant business in New York, actively seeks business in New York including through the actions against Plaintiffs, and recently used the conduct complained of as a segue to offering services to Plaintiffs, to be conducted in New York.
11. In fact, in a long email plainly written with this action in mind, Paris admits "As you know, my company is forming a non-profit National Advisory Council on

4

Accreditation (NACA) which will be offering similar services to organizations such as yours." (Ex. A)

12. . The Amended Complaint also alleges how Defendants are using the publicity of their actions against G31000, including actions taken in New York to "step into the breach" and approach G31000 clients.

13. Paris's claims notwithstanding, he is in the same or similar industry as evidenced by his inclusion of G31000 slides into his presentation (Gluck Decl. Ex. E) for his ISO 9001 clients. He also recommends ISO 31000 risk training for his ISO 9001 clients. (Gluck Decl. Ex. E)

14. Amended Complaint ¶17 addresses the issue of subject matter jurisdiction. The parties are completely diverse, damages are claimed for over $75,000 and jurisdiction is also proper under the federal claim for unfair competition.

### B. Success on The Merits

15. In response to Plaintiffs motion, Defendants submitted a barebones self serving statement, unsupported by evidence, which in the absence of any other evidence calls for scrutiny, by way of expedited discovery or at a hearing.

16. Defendants assert a "lack of integrity", calling three exhibits of the Gluck Declaration "self contradictory". (Def. Memo in Opp ¶21)

17. Defendants do not deny that Exhibit H to Gluck's Declaration shows that Karen Hardy withdrew because of Paris' invective. (Gluck Decl. Ex. H)

18. Paris appears to argue that because Dr. Hardy was given notice through Dali, rather than through Paris, that Dali inflicted the harm! The harm was accomplished by Paris' post, not the notice by Dali.

19. Dali was obliged to inform Dr. Hardy rather than cover up what appears as three out of the four top Google results when searching for "G31000 Karen Hardy". (Ex. B)

20. As noted in the Amended Complaint, Defendants utilize Search Engine Optimization to prey on people searching for G31000 and to raise their own profile. Arguably, Dali would have been remiss had he not warned Dr. Hardy that Paris had set his sights on her as he had with Gluck. Dr. Hardy is clearly threatened in the post that the media will be contacted by Defendants to stir up controversy about Dr. Hardy, and that the White House will seek to distance itself from her, leading to the loss of her job.

21. Defendants further claim that Paris dropped support for G31000 based on "incompetence" and not based on retaliation. In fact, Exhibit E to the Gluck Decl., appended to show that Paris set out to damage deliberately, is sent mere hours after Paris claims "Your comments to me were very expensive. You are just not bright enough to realize it". (Gluck Decl. Ex. C) and "I intend on making sure this costs you money." (Gluck Decl. Ex. D). Defendants appear to be blissfully unaware of their own mantra that bemoans a lack of context in accusations.

22. Finally, claims that Gluck Dec. Ex. F shows evidence of a correction made by Paris is disingenuous. As is evident from the exhibit, Dali and not Paris, corrected the

6

post. Paris is simply stating, "mistakes will slip through" after he has been corrected.

23. Defendants' Opposition is notably silent to most of the contentions in the Gluck Declaration.

24. Paris does not explain why, when informed of Dali's collaboration and authorship of an article, Defendants kept accusing Dali of plagiarism.

25. After Paris failed to correct his "report" on the collaboration and lack of plagiarism, he was subsequently informed that his ad hominem attacks did not deserve a response.

26. Defendants' have wrongfully accused Dali of plagiarism, a claim that remains on the Oxebridge and LinkedIn sites today. Should this and similar claims constitute the "findings" that Paris has presented to speakers, sponsors and employers as truth, there is undoubtedly a likelihood of success on the merits of this case.

27. While Paris disputes interference with any speakers at the Conference, he does admit that speakers were contacted (Paris Decl. ¶14). However, he does not provide any detail such as who, what, when, how and the nature of his "reporting". In light of such an admission, expedited discovery or examination at a hearing is clearly necessary.

28. While Defendants disclaim that there is any interface or cross-pollination with Plaintiffs' business, Paris holds himself out to be an authority in the ISO standardization, education and accreditation industry, as this is the root of his justification (erroneous or not) of being a watchdog of the industry.

29. Similarly, part of Defendants business is consulting with companies across the broad ISO platform and assisting them in gaining a form of accreditation. Even, during the pendency of the instant case, Paris has approached the Plaintiffs offering his services. (Ex. B)
30. Similarly, as noted above, while Paris claims that the his postings and "investigations" are "primarily focused on the ISO 9001 industry" (Paris Decl. ¶7) it is clear that by virtue of his scrutiny of the ISO 31000 matters and multiple postings in ISO 31000 forums that ISO 31000 is related to Defendants business.
31. Defendants seem to be laboring under the misapprehension that if their posts are "self evident to be opinion" (Paris Decl. ¶8) that such comments are exempted from being factually accurate.
32. A bond is not required where as according to Paris, he would suffer no adverse consequences monetarily from the imposition of a preliminary injunction.

## CONCLUSION

33. Based on the foregoing, it is respectfully requested that Plaintiffs' motion for a preliminary injunction be granted in its entirety, that expedited discovery is ordered, and that Plaintiffs have such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
August 7, 2014

                                                  Respectfully Submitted,
Garson, Ségal, Steinmetz, Fladgate LLP

                             By: ___/s/ Robert Garson___
                                 Robert Garson (RG-1521)
                                 Michael Steinmetz (MS-3164)
                                 164 West 25th Street Suite 11R
                                 New York, NY 10001
                                 Telephone (212) 380-3623
                                 Facsimile  (347) 537-4540
                                 rg@gs2law.com
                                 Attorneys for Plaintiff