UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| G31000 NORTH AMERICA, INC., ALLEN GLUCK, and ALEXIS DALI,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>-against-<br><br><br>CHRISTOPHER PARIS AND OXEBRIDGE QUALITY RESOURCES INTERNATIONAL, LLC.<br><br>　　　　　　　　　　　Defendants. | Civil Action No.: 1:14-cv-03885-VEC |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Garson, Ségal, Steinmetz, Fladgate LLP
164 West 25th Street, 11R
New York, NY 10001
Tel: (212) 380-3623

*Attorneys for Plaintiffs*

## Introduction

1. Plaintiffs G31000 North America, Inc. ("G31000"), Allen Gluck ("Gluck") and Alexis Dali ("Dali") (collectively "Plaintiffs"), by their attorneys, Garson, Ségal, Steinmetz, Fladgate LLP, respectfully submit this memorandum of law in opposition to Defendants' Motion to Dismiss Plaintiff's (sic) Amended Complaint for Lack of Jursidiction and Improper venue undated but filed on August 14, 2014 ("Defendants' Motion" or "Def. Motion.") on behalf of Christopher Paris ("Paris") and Oxebridge Quality Resources International LLC ("Oxebridge") (collectively "Defendants"). This action involves claims by Plaintiffs for unfair competition, intentional interference with contractual relationships, defamation, and common law trade libel.

2. Contrary to the Defendants' assertions, this Court has personal jurisdiction over this matter, since Defendants purposely availed themselves of the laws and privileges of New York through their contacts in New York and ongoing business dealings in New York. Here, Defendants solicited and then transacted business within New York State, and the causes of actions arose out of these transactions. Therefore, New York's long arm statute allows jurisdiction over Defendants and their motion to dismiss should be denied as stated in further detail below.

**Preliminary Statement**

3. Plaintiffs filed an Amended Complaint on August 6, 2014 ("Amended Complaint" or "Am. Compl.") that specifically address the question of acts conducted by Defendants that provide this court with jurisdiction (Am. Compl. Generally and ¶¶ 17-24).

4. Plaintiffs also filed a Reply to Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction on August 7, 2014 (the "Reply Memo", Docket 26,)") which details how the Court has jurisdiction (Reply Memo ¶¶9-14).

5. Defendants simply ignore Plaintiff's papers when re-filing this scant Motion to Dismiss. Plaintiffs are left with the task of balancing the need to avoid simply repeating the aforementioned Injunction Reply Memo and Amended Complaint while still addressing the issues raised. Plaintiffs therefore cite to the Reply Memo and Amended Complaint where applicable and wholly incorporate these documents into the present Memo by reference.

6. Furthermore, Defendants' Motion is replete with alleged factual statements that are unsupported by a declaration and appear to be the testimony of Defendants' attorney. For example, "Defendants have not generated any new business" Def. Motion ¶6, "Defendants do not seek a competitive advantage" Def. Motion ¶7, "PARIS' blog or activity on websites such as Linked-In does not target the state of New York" Def. Motion ¶5.

7. Defendants do not deny ongoing business relationships in New York with multiple clients such as L3 Communications and Jet Blue (Def. Motion ¶9). Nor do

they address the fact that Defendants sought to perform services for Plaintiffs in New York around the time of the Complaint. (Am. Comp. ¶23).

8. Defendants similarly do not deny contacting speakers who were scheduled to appear at a G31000 conference in July 2014; contacting sponsors of the G31000 conference and contacting Gluck's employer and the college with which Plaintiffs had a business relationship. This campaign by Defendants was designed to harm a New York entity, G31000; New York resident Allen Gluck; and the president of G31000 Alexis Dali, while simultaneously generating publicity for Defendants' business. The causes of action for unfair competition, intentional interference with contractual relationships, defamation, and common law trade libel arise out of actions directed at New York, for damages to New York Plaintiffs in New York, to raise publicity for Defendants' own business that also operates in New York, and finally to offer Defendants' services in New York, to Plaintiffs.

9. Defendants respond to these well-supported allegations (Am. Complaint Ex. A-V) by simply claiming that they "conducted investigations" and presented unnamed people with "findings".

10. Defendants' conduct was directed at New York, in order to harm Plaintiffs in New York. Defendants purposely do not state who was contacted and fail to address the contacts directly with New York, while at the same time admitting without elaboration that there were multiple contacts to parties in New York with "findings".

11. Defendants similarly do not address reaching out to New York authorities attempting to have a criminal case brought against Plaintiffs by the New York Attorney General. Defendants have further knowledge of who was contacted in New York with the intention of causing further damage to Plaintiff in New York.

12. Of course, there is no dispute that Gluck's employer is in New York State and that Defendants made multiple phone calls and sent numerous emails for the purpose of having Gluck fired and cutting off sponsorship for the G31000 conference.

13. Defendants craftily limit the statements in support of their motion to dismiss to address complaints of blog postings, seeking to create the illusion that nothing else was done. In doing so, Defendants completely ignore their conduct beyond the blog posts and all the phone calls and emails into New York State.

14. Defendants also do not respond to allegations that Defendants raised their own business profile by attacking Plaintiffs. Nor do Defendants address Plaintiffs' claims that posting defamatory statements as alleged "facts" uncovered after "investigation" is intended raise Defendants' profile every time someone searches the internet for Plaintiffs (Am. Compl. ¶¶41-44).

15. In short, this court has jurisdiction to hear this matter. While Defendants are hopeful that even with all their actions directed at New York, they will be granted a free pass to continue the campaign to harm Plaintiffs, and raise their own profile and business, there are no jurisdictional bars that would preclude the Court from dealing with this matter.

16. Defendants misleadingly state that they "have not generated any new business" (Pl. Motion to Dismiss Memo ¶6) and do not challenge the statement in the Amended Complaint that Defendants sought to acquire business in New York at the time of the events complained of, utilizing the publicity generated by their conduct. It is not material if their efforts failed. In fact, having first set the stage by their actions, Defendants reached out to New York in an attempt to provide services to Plaintiffs in New York as well! (Am. Compl. ¶23) In addition, this statement appears to be unsupported testimony offered independently by Defendants' counsel.

17. Defendants' counsel also offers the unsupported claim that Defendants' actions were not in furtherance of a competitive edge because the parties are "not in competing businesses" and that there is no nexus between the actions and act, at best creates a question of fact for which the Complaint is taken as true for the purposes of this motion. Beginning in 2015, Defendants' business will require a risk-based thinking component. To this end, Defendants actually incorporated G31000's slides into their presentations. Defendants admit that they would recommend that their clients receive training in ISO31000. After Gluck spoke at an ISO9001 conference, Defendants posted an online complaint that the conference organizers were sucking up to the "charlatans" Gluck and Dali of ISO31000. There is no doubt that the parties are in related and competing businesses and that the Defendants' tortious actions were in furtherance of Defendants' business.

Defendants also admit that G31000 was offering services to ISO9001 audit consumers (Am. Compl. ¶82, Ex. K).

18. In a waste of this Court's time, Defendants seek dismissal for lack of subject matter jurisdiction, claiming the federal cause of action for unfair competition is not sustainable. 15 USC 1121 provides federal subject matter jurisdiction for the Federal cause of action, namely 15 USC 1125, Unfair Competition. Defendants have not moved under 12(b)(6) for dismissal of the unfair competition cause of action and do not explain why Plaintiffs' cause is not sustainable. The cause of action for federal unfair competition is based on Defendants' false and/or misleading misrepresentations of fact in commercially damaging and/or disparaging the nature of Plaintiffs' characteristics and qualities.

19. Defendants also do not contest that the Court has diversity jurisdiction, as alleged in the complaint.

20. Paris admits that he derives business profile, clients, and income arising out of his "advocacy work on LinkedIn." (Paris Decl. ¶20) Defendants can reasonably be expected to derive business profile and clients and income arising out of oxebridge.com. Defendants thus seek to raise their own profile through tortious interference, defamation, unfair competition, and subsequent "reporting".

21. Plaintiffs submit that the Amended Complaint clearly establishes that both Defendants are subject to the personal jurisdiction of this Court.

22. On his own admission, Paris contacted speakers, sponsors, and Manhattanville College, a New York entity and Gluck's former employer. Further, Defendants have

targeted a New York company, regarding a conference that was held in New York; filed a complaint with the Attorney General of New York; and made multiple attempts to have a New York College "reconsider its relationship with Plaintiffs", ultimately causing harm in New York. If that were not sufficient, Defendants have conducted significant business in New York, and actively seek business in New York including through the actions against Plaintiffs, and recently used the tortious conduct as a segue to offering services to Plaintiffs, to be conducted in New York.

23. As noted in the Amended Complaint, Defendants utilize Search Engine Optimization to prey on people searching for G31000 and to raise their own profile. In fact, in a long email plainly written with this action in mind, Paris admits "As you know, my company is forming a non-profit National Advisory Council on Accreditation (NACA) which will be offering similar services to organizations such as yours." (Ex. A to Gluck Declaration in Support of Motion for Preliminary Injunction Docket __ (the "Gluck Decl.")

24. The Amended Complaint also alleges how Defendants use the publicity generated by their actions against G31000 -including actions taken in New York- to "step into the breach" and usurp G31000's clients.

25. Paris' claims notwithstanding, he operates his business in the same or similar industry as Plaintiffs. This was evidenced by his inclusion of G31000 slides into a presentation delivered to his ISO 9001 clients. (Gluck Decl. Ex. E) Paris also recommends ISO 31000 risk training for his ISO 9001 clients. (Gluck Decl. Ex. E).

26. Amended Complaint ¶17 also addresses the issue of subject matter jurisdiction. The parties are completely diverse, damages are claimed for over $75,000 and jurisdiction is also proper under the federal claim for unfair competition.

27. While Defendants disclaim that there is any interface or cross-pollination with Plaintiffs' business, Paris holds himself out to be an authority in the ISO standardization, education and accreditation industry, as this is the root of his justification (erroneous or not) of being a "watchdog" of the industry.

28. Part of Defendants' business is consulting with companies across the broad ISO platform and assisting them in gaining a form of accreditation. Even during the pendency of this case, Paris approached the Plaintiffs offering his services. (Ex. B to Gluck Decl.)

29. Similarly, as noted above, while Paris claims that his postings and "investigations" are "primarily focused on the ISO 9001 industry" (Paris Decl. ¶7) it is clear that by virtue of his scrutiny of the ISO 31000 matters and multiple postings in ISO 31000 forums that ISO 31000 is related to Defendants' business.

## Argument

**THIS COURT MAY PROPERLY EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS**

30. In considering sufficiency of the pleadings, the Court is limited to the factual allegations in Plaintiffs' First Amended Complaint ("Amended Complaint"), which are accepted as true, to documents attached to the Complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or

to documents either in plaintiffs possession or of which plaintiff had knowledge and relied on in bringing suit. *McNulty v. New York City Department of Finance*, 941 F. Supp. 452, 453 (S.D.N.Y. 1996). Although a plaintiff bears the burden of establishing personal jurisdiction over a defendant, when a defendant brings a Rule 12(b)(2) motion prior to discovery, a plaintiff is only required to have made out a *prima facie* case of jurisdiction through the pleadings and affidavits to defeat the motion. See *Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 196 (2d Cir. 1990). This remains true "notwithstanding any controverting presentation by the moving party." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). The "pleadings and affidavits are to be construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in plaintiff's favor." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

31. As an out-of-state resident, defendant Paris is subject to personal jurisdiction in New York under New York's long-arm statute that confers jurisdiction over him by reasons of his contacts within the state. See *Copp v. Ramirez*, 62 A.D.3d 23, 28, 874 N.Y.S.2d 52 (1st Dept), lv. app. den. 12 N.Y.3d 711, 882 N.Y.S.2d 397, 909 N.E.2d 1235 (2009). New York long-arm jurisdiction is governed by CPLR §302(a). The Court has personal jurisdiction over Defendant under both §302(a)(1) and §302(a)(3).

32. To make a *prima facie* showing of jurisdiction pursuant to section 302(a)(1), a plaintiff must establish, first, that defendant transacted business within the state of New York, and second, that this action arises from that transaction of business.

N.Y. C.P.L.R. §302; *Sole Resort, S.A. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir.2006).

33. For purposes of the long-arm statute, a party "transacts business" within the state when it "purposefully avails itself of the privilege of conducting activities within New York." *Ehrenfeld v. Bin Mahfouz,* 9 N.Y.3d 501, 508, 851 N.Y.S.2d 381, 881 N.E.2d 830 (2007). Purposeful availment—the "overriding criterion" necessary to establish personal jurisdiction pursuant to CPLR §302(a)(1)—requires more than "random, fortuitous, or attenuated contacts." *Capitol Records*, 611 F.Supp.2d at 358 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Instead, "[p]urposeful activities are those with which the defendant, through volitional acts, avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 880 N.E.2d 22 (2007) (quotations and citations omitted).

34. Section §302(a)(1) applies to actions in tort when supported by a sufficient showing of facts. *A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*, 828 F.Supp.2d 557, 565 (2011) (citing *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir.2004)). Moreover, under New York law, when a person utters a defamatory statement without the state that causes injury to the plaintiff within the state, jurisdiction may be acquired under section 302(a)(1), even though section 302(a)(3)—which explicitly concerns jurisdiction as to out-of-state tortious acts that

cause in-state injury—excludes defamation cases from its scope. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

35. There is a clear distinction between a situation where the only act which occurred in New York was the mere publication of the libelous material accessible in New York and the instant scenario where purposeful steps were taken to impede, hinder or affect business transactions that taken place in New York in the context where a defendant also offers services in New York. Where such transactions were taking place in New York it may not be said that subjecting the defendant to this State's jurisdiction is an "unnecessary inhibition on freedom of speech or the press." *Legros v. Irving,* 38 A.D.2d 53, 55–56 (1st Dep't 1971).

36. To determine the existence of jurisdiction under §302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction. *Best Van Lines*, 490 F.3d at 246 (citing *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 1142, 818 N.Y.S.2d 164, 166 (2006)).

37. A number of courts have addressed the question of what type of Internet activity constitutes the transaction of business in New York by an out-of-state defendant. See, e.g., *Best Van Lines, Inc. v. Walker*, 2004 WL 964009 (S.D.N.Y.); *Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F.Supp.2d 449, 456 (S.D.N.Y.2000); *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 565 (S.D.N.Y.2000).

38. Courts have found that jurisdiction may exist where the defendant maintains an interactive web site which permits the exchange of information between users in

another state and the defendant. See *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 565 (S.D.N.Y.2000) (finding transaction of business in New York where out-of-state website allowed New York customers to apply for loans on the internet and chat with online representative; court found interaction was "both significant and unqualifiedly commercial in nature") and *National Football League v. Miller*, 2000 WL 335566 (S.D.N.Y.) (finding transaction of business in New York where out-of-state website was regularly visited by New Yorkers and generated substantial income from advertisers that bought space on the website).

39. Here, Defendants have embarked on a course of conduct that connects Oxebridge with New York and have also admitted to having present and prior New York clients. Paris actively promotes himself and his company on his website, Oxebridge.com, and on numerous social media websites. On Oxebridge.com, Defendants invite new clients to fill out their contact information on an interactive webpage in order to receive a quote for services. These facts indicate that Paris presently invites further business activity from New York clients. Most importantly, Defendants compete with Plaintiff in the same narrow field of risk management. Thus, the Defendants' website and business activity in New York qualifies as purposeful availment.

40. Since the Defendant transacts business in New York, the second prong of §302(a)(1) is relevant. The second prong asks whether the cause of action "aris[es] from" that business transaction or transactions. See *Deutsche Bank*, 7 N.Y.3d at 71, 850 N.E.2d at 1142, 818 N.Y.S.2d at 167. "New York courts have held that a claim

'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" *Sole Resort*, 450 F.3d at 103 (citations omitted). "A connection that is 'merely coincidental' is insufficient to support jurisdiction." Id. (citation omitted). In the instant case, the Defendant's business activities, which include significant activity in New York, are in direct competition with Plaintiffs' business activities. This competition is the motivation for Defendants' defamatory statements. Thus, the defamation arises from Defendants overall business activity, which includes significant activity in New York.

41. This Court also has personal jurisdiction over defendants pursuant to N.Y. CPLR §302(a)(3) against a Plaintiff that commits a tortious act without the state causing injury to person or property within the state, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

42. In determining whether there is injury in New York sufficient to warrant §302(a)(3) jurisdiction, courts must generally apply a situs-of-injury test, which seeks to locate the "original event which caused the injury." See *Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 683 (2d Dep't 1987). N.Y. CPLR §302(a)(3)(i),

requires a showing that the defendant has or engages in any persistent course of conduct. Siegel, N.Y. Prac §88, at 159 [4th ed]). Here, as discussed above, Plaintiff has pled that Defendants have engaged in a persistent course of conduct, within New York State. Moreover, N.Y. CPLR §302(a)(3)(ii) has also been met, which requires a showing that Defendant expects or should reasonably expect the act to have consequences in the state, and that Defendants derive substantial revenue from interstate or international commerce.

43. Defendants have committed a tortious act within New York. However, if the Court finds that the tortious act was committed outside New York, the Defendant nonresidents have purposely availed themselves of the privilege of the benefits and protections of New York's laws and caused injury within the state. Even though the cause of action sued on need not be related to those New York activities under N.Y. CPLR §302(a)(3), the relevant cause of action (tortious interference) did arise from Defendants' activities in New York. This persistent course of conduct created minimum contact with New York. Moreover, based on the allegations in the Amended Complaint, which must be accepted as true, Defendants expected or should have reasonably expected that their acts would have consequences in New York, and Defendants derived substantial revenue from interstate commerce.

44. Plaintiffs' Complaint alleges that Defendants tortiously interfered with Plaintiffs' business relationships. Tortious interference with contract requires (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) that the defendant improperly interferes with that

contract without justification; (4) resulting in an actual breach of the contract; and (5) damages. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76 (N.Y. 1996). *Guard-Life Corp. v. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980).

45. The New York Court of Appeals has held that "where there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior." *NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 621, 641 N.Y.S.2d 581, 585 (1996) (emphasis added); *KSL Recreation Corporation v. Boca Raton Hotel and Club Limited Partnership*, 168 Misc.2d 18, 23, 637 N.Y.S.2d 261, 265 (Sup. Ct. N.Y. Co. 1995) (Cahn, J.) (actual malice not a requirement of tortious interference, 'persuasion to breach alone' may constitute interference … It is not necessary that wrongful means, such as fraud or threats, be involved."); *Inn Chu Trading Co. Ltd. v. Sara Lee Corp.,* 810 F. Supp. 501 (S.D.N.Y. 1992) (the mere act of passing confidential sales information received from plaintiff to the defendant's subsidiary which used the information as a basis for terminating its contract with plaintiff was sufficient to defeat motion to dismiss).

46. In this case, Plaintiffs' pled that Defendants were aware of Plaintiffs' business relationships, and specifically that, Defendants' conduct, caused these relationships to be terminated. Accordingly, Plaintiffs' tortious interference claim is more than adequately pleaded to defeat a motion to dismiss at this stage of the proceedings.

47. Thus for jurisdictional purposes, it is immaterial whether the emails sent to Manahattanville College and G31000's sponsors in New York, or the blog postings that caused Dr. Karen Hardy to breach her agreement to speak at the New York Conference were true, because defamation is but one of multiple torts Plaintiffs alleged in their Complaint. Accordingly, Defendants may not invoke the defamation exception to New York's long-arm statute in order to escape this Court's jurisdiction.

**Jurisdictional Discovery is Appropriate.**

48. Even if this Court concluded that, despite all of the evidence presented in the Complaint and supporting documents, Plaintiffs have not made a *prima facie* showing of jurisdiction it would not be required to grant Defendants' motion. As this Court explained in *Langenberg v. Sofair*, No. 03 CV 8339, 2006 WL 2628348, at 6 (S.D.N.Y. Sept. 11, 2006), courts "have the discretion to grant discovery to explore factual issues presented by Rule 12(b)(2) motions" even where the plaintiff has failed to make a prima facie showing.

49. There can be little question that Plaintiff has at the very least "made a sufficient start, and shown [its] position not to be frivolous," thereby justifying jurisdictional discovery. *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate*, 731 F. Supp. 587, 593 (S.D.N.Y. 1990) (quoting *Peterson v. Spartan Indus., Inc.*, 33 N.Y.2d 463, 476 (1974)); see also *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 762-63 (S.D.N.Y. 2004) (noting that a plaintiff "should be provided with ample

opportunity to secure and present evidence relevant to the existence of jurisdiction through jurisdictional discovery").

50. There are myriad issues as to which discovery likely would be fruitful based on the evidence Plaintiffs have presented thus far. These issues include, among others: (i) whether Defendants reached out to solicit business in New York at the time of thier attacks on Plaintiffs; (ii) the extent of Defendants' service contracts with clients in New York  (iii) the extent that Defendants solicit clients through the website oxebridge.com; (iv) the extent of meetings and conferences for which Defendant Paris traveled to New York; and (v) the other significant contacts Defendants have with New York.

51. CONCLUSION

52. Based on the foregoing, Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied in its entirety, that expedited discovery be ordered, and that Plaintiffs have such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
September 4, 2014

      Respectfully submitted,
       Garson, Ségal, Steinmetz, Fladgate LLP


By:  /s/ Robert Garson
   Robert Garson (RG-1521)
   Michael Steinmetz (MS-3164)
   164 West 25th Street Suite 11R
   New York, NY 10001
   Telephone (212) 380-3623
   Facsimile  (347) 537-4540
   rg@gs2law.com
   Attorneys for Plaintiff